UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ABEL ALEJANDRO VILLAGRANA, | ) |
| Plaintiff, | ) |
| v. | ) NO. 3:21-cv-00836 |
| KIMISHA LOVING, et al., | ) |
| Defendants. | ) |

# MEMORANDUM OPINION

Abel Alejandro Villagrana, an inmate of the DeBerry Special Needs Facility (DSNF) in Nashville, Tennessee, submitted a pro se civil complaint for filing on November 4, 2021, along with an application for leave to proceed in forma pauperis. By Order entered November 17, 2021, the Court denied the application for leave to proceed as a pauper based on Plaintiff's demonstrated ability to pay the filing fee and ordered him to pay the fee and file an amended complaint within 30 days. (Doc. No. 5).

On November 30, 2021, Plaintiff filed his Amended Complaint. (Doc. No. 9). On December 15, 2021, he paid the full filing fee. (Doc. No. 13). The case is now before the Court for an initial review pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A and 42 U.S.C. § 1997e, and for ruling on Plaintiff's pending motions.

## I. INITIAL REVIEW

**A. PLRA Screening Standard**

Pursuant to 28 U.S.C. § 1915A, the Court must conduct an initial review of any prisoner complaint against a governmental entity, officer, or employee, and must dismiss the complaint or any portion thereof if it is facially frivolous or malicious, fails to state a claim upon which relief

may be granted, or seeks monetary relief against a defendant who is immune from such relief. This initial review of whether the Amended Complaint states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Applying this standard, the Court must view the Amended Complaint in the light most favorable to Plaintiff and, again, must take all well-pleaded factual allegations as true. Tackett v. M & G Polymers, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009) (citing Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). Furthermore, pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). However, pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989), nor can the Court "create a claim which [a plaintiff] has not spelled out in his pleading." Brown v. Matauszak, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975)).

**B. Section 1983 Standard**

Plaintiff seeks to vindicate alleged violations of his federal constitutional rights under 42 U.S.C. § 1983. Section 1983 creates a cause of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution

2

or federal laws. Wurzelbacher v. Jones-Kelley, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a Section 1983 claim, Plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. Carl v. Muskegon Cnty., 763 F.3d 592, 595 (6th Cir. 2014).

**C. Allegations and Claims**

The Amended Complaint names as Defendants twelve individual employees of DSNF (sued in their individual and official capacities) and the City of Nashville (Doc. No. 9 at 2–8) and describes events that occurred in two series: "First series June 2018 – October 2018" and "Second series May 2021 – July 2021." (Id. at 12).

Plaintiff alleges that in 2018, he was denied food and water "for weeks at a time," which caused him breathing problems and heart problems, as well as "needle-like feelings in the tips of his limbs" that have persisted. (Id. at 10, 12). He also alleges that he was denied showers in 2018. (Id.).

In what Plaintiff alleges to be a "mirror of an incident" that happened in 2018, he complains of "the food and water" and "the food issue" reoccurring more recently, alleging that his request for "help getting fed" was ignored. (Id. at 11). He alleges that correctional officers Loving, Carter, and Welch "were not feeding" him from approximately May to July 2021, and that Carter and Welch "did not turn on Plaintiff's drinking water or toilet water for 3 days and 4 nights after Plaintiff's water had been previously cut off." (Id. at 10).

Plaintiff further alleges that two correctional officers "put [him] in the shower for 1 hour and 5 hours respectively," and told him to shower while restrained. (Id. at 10). He alleges that he was put "outside at night on the rec yard for another hour" while restrained, and that no one

3

intervened when he complained. (Id.). He complains that there were "periods" where he was not provided with toiletries or soap for his room. (Id.).

Plaintiff claims that the "unlawful restraint [and] denial of food trays, medications, drinking water, soap, and toiletries" constitute cruel and unusual punishment, while the denial of an effective grievance procedure violated his right to due process. (Id. at 8). He claims that all Defendants were deliberately indifferent to his needs, and that the City of Nashville failed to respond when one of his friends called to request help. (Id. at 11). He alleges injuries including permanent numbness and tingling in his extremities, "excruciating pain for hours at a time," scarring, and possible damage to his heart and kidneys. (Id. at 12). As relief, Plaintiff seeks an award of compensatory and punitive damages. (Id.).

**D. Analysis**

To begin with, Plaintiff is not entitled to the compensatory and punitive damages he seeks against DSNF employees in their official capacities. DSNF is a prison facility operated by the Tennessee Department of Correction, a state agency. Owens v. O'Toole, No. 3:14-cv-02040, 2014 WL 5846733, at *3 (M.D. Tenn. Nov. 12, 2014). Accordingly, DSNF "is also an arm of the state," and its employees are state officials. Tillman v. Woodall, No. 3:13-cv-0762, 2013 WL 4049977, at *4 (M.D. Tenn. Aug. 9, 2013). In a suit for damages, "neither a State nor its officials acting in their official capacities are 'persons' [subject to suit] under § 1983." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). In Will, the Supreme Court stated: "Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." Id. In addition to the inapplicability of Section 1983 in this context, "the Eleventh Amendment bars § 1983 suits seeking money damages against states and against

state employees sued in their official capacities." Rodgers v. Banks, 344 F.3d 587, 594 (6th Cir. 2003) (citing Will, 491 U.S. at 66). As a result, the Amended Complaint fails to state a colorable claim for damages under Section 1983 against the Defendants in their official capacities.

As to Plaintiff's claim against the City of Nashville, the only allegation in support of this claim is that "Plaintiff's friend Mr. Ortega's family called up to the municipality to get Plaintiff help; however, no aid was rendered." (Doc. No. 9 at 11). Unlike states, municipalities may properly be sued under Section 1983. See, e.g., Williams v. Baxter, 536 F. Supp. 13, 15–16 (E.D. Tenn. 1981). However, "[t]o plead a claim for municipal liability under § 1983, Plaintiff must plausibly allege that his or her constitutional rights were violated and that a policy or custom of [the municipality] was the 'moving force' behind the deprivation of Plaintiff's rights." Okolo v. Metro. Gov't of Nashville, 892 F. Supp. 2d 931, 941 (M.D. Tenn. 2012) (citing Miller v. Sanilac County, 606 F.3d 240, 254–55 (6th Cir. 2010)). The Amended Complaint does not allege that any harm was caused to Plaintiff, an inmate in state custody, by the execution of a policy or custom of the City of Nashville. Accordingly, the City of Nashville will be dismissed as a Defendant.

The remaining claims are those asserted against the DSNF employees in their individual capacities, for actions allegedly taken against Plaintiff during two time periods: June to October 2018 and May to July 2021.

Plaintiff cannot recover for harms suffered during the first time period, in 2018. The statute of limitations for Section 1983 claims is the one-year period under Tenn. Code Ann. § 28-3-104(a)(1)(B). Wilhite v. Corr. Corp. of Am., 498 F. App'x 499, 502 (6th Cir. 2012); Roberson v. Tennessee, 399 F.3d 792, 794 (6th Cir. 2005). Plaintiff filed his original complaint in November 2021. Any claim arising from injuries inflicted in 2018 accrued years prior to the filing of the complaint and is therefore subject to dismissal as untimely. See Comer v. Transit Auth. of N.

5

Kentucky, No. 2:20-CV-00084-GFVT, 2020 WL 3719818, at *2 (E.D. Ky. July 6, 2020) ("The Court may dismiss a claim plainly barred by the applicable limitations period upon initial screening.") (citations omitted).

The deprivations that allegedly occurred between May and July of 2021 include the denial of food trays by Defendants Loving, Carter, and Welch, and the failure of Carter and Welch to "turn on Plaintiff's drinking water or toilet water for 3 days and 4 nights." (Doc. No. 9 at 10). The Amended Complaint does not allege that Plaintiff was deprived of all food or water for any sustained length of time, or that he suffered weight loss, malnutrition, or dehydration. However, in a Motion for Preliminary Injunction filed on November 18, 2021, Plaintiff alleges "a total of 50 lbs lost in 5 months" and seeks an order restraining Defendants Loving, Carter, and Welch (among other Defendants) from entering "Building 7 where the Plaintiff is . . . located." (Doc. No. 8 at 3, 5).

The Eighth Amendment's prohibition against cruel and unusual punishment requires that inmates not be subjected to severe conditions of confinement that deprive them of "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). "Without question, the Constitution requires that prisoners be fed by their custodians in a manner that comports with [this standard], and in a manner that is nutritionally sufficient to sustain normal human health." Caldwell v. George, No. 1:14-0019, 2015 WL 5838622, at *4 (M.D. Tenn. Oct. 7, 2015), report and recommendation adopted, No. 1-14-00019, 2015 WL 6755385 (M.D. Tenn. Nov. 4, 2015) (citing Cunningham v. Jones, 567 F.2d 653, 660 (6th Cir. 1977)) (internal citation omitted). Furthermore, "weight loss of approximately 50 pounds . . . cannot be summarily disregarded or deemed de minimis by the Court." Id. Accordingly, for purposes of initial review, and liberally construing Plaintiff's filings in the light most favorable to him, a colorable Eighth

Amendment claim for denial of sufficient nutrition is stated against Defendants Loving, Carter, and Welch. This claim will be allowed to proceed for further development.

However, Plaintiff's allegations of being restrained in the shower on one or two occasions; being restrained for an hour outdoors at night on one occasion; and being subjected to periods where he was not provided with toiletries or soap for use in his room do not support a colorable claim that he was deprived of the minimal civilized measure of life's necessities. Such isolated instances of "restrictive and even harsh" conditions resulting in temporary discomfort are insufficient to support an Eighth Amendment claim, as they are "part of the penalty that criminal offenders pay for their offenses against society" rather than the sort of extreme deprivations that amount to cruel and unusual punishment. Harden-Bey v. Rutter, 524 F.3d 789, 795 (6th Cir. 2008) (quoting Rhodes, 452 U.S. at 347, and Hudson v. McMillian, 503 U.S. 1, 9 (1992)). The Sixth Circuit has specifically found that an inmate's Eighth Amendment rights were not violated by his temporary restraint in shackles or a four-day deprivation of toiletries. Taylor v. Larson, 505 F. App'x 475, 476–78 (6th Cir. 2012); see also Richmond v. Settles, 450 F. App'x 448, 455 (6th Cir. 2011) (finding no plausible Eighth Amendment claim based on denial of inmate's access to toilet paper, soap, toothpaste, toothbrush, running water, and the ability to shower for six days)); Hailey v. Bogota, No. 20-12583, 2021 WL 509899, at *6 (E.D. Mich. Feb. 11, 2021) (relying on Richmond to find that deprivation of "personal hygiene items for a 'brief span of time' does not rise to the level of an Eighth Amendment violation," nor does short-term isolation). Accordingly, the claims of the Amended Complaint based on these conditions of confinement will be dismissed.

Finally, to the extent that the Amended Complaint raises the claim that Plaintiff's due process rights were violated by an inadequate grievance procedure that failed to yield any meaningful response to his food-service grievances (see Doc. No. 9 at 8, 14), that claim must be

7

Case 3:21-cv-00836   Document 17   Filed 02/10/22   Page 7 of 12 PageID #: 103

dismissed because "there is no inherent constitutional right to an effective prison grievance procedure." Argue v. Hofmeyer, 80 F. App'x 427, 430 (6th Cir. 2003); see also, e.g., Baird v. Bergenson, No. 1:19CV-P12-GNS, 2020 WL 476858, at *3 (W.D. Ky. Jan. 29, 2020) (citing cases).

## II. MOTION FOR PRELIMINARY INJUNCTION

Plaintiff has filed a Motion for Preliminary Injunction in which he asks that Defendants Loving, Carter, Welch, and others be "temporarily restrained from serving Plaintiff and from entering Building 7 and rotated to another building or nearby Riverbend Maximum Security Institution." (Doc. No. 8 at 1). Based on prior injuries he has allegedly suffered at Defendants' hands, Plaintiff asserts that he will suffer irreparable injury if the Court does not "allow[ ] a Temporary Restraining Order," noting that "[i]f Plaintiff is discriminated against and retaliated against for this lawsuit, Plaintiff will be unable to continue on the lawsuit." (Id. at 3). For this reason, Plaintiff asks for an order restraining Defendants from entering Building 7, where Plaintiff is housed. (Id. at 5).

Federal Rule of Civil Procedure 65 governs the Court's power to grant injunctive relief, including temporary restraining orders without notice. Fed. R. Civ. P. 65(b). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981). However, "[i]f the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury, either by returning to the last uncontested status quo between the parties, by the issuance of a mandatory injunction, or by allowing the parties to take proposed action that the court finds will minimize the irreparable injury." Stenberg v. Cheker Oil Co., 573 F.2d 921, 925 (6th Cir. 1978) (internal citations omitted). "Temporary restraining orders

8

and preliminary injunctions are extraordinary remedies which should be granted only if the movant carries his burden of proving that the circumstances clearly demand it." Ciavone v. McKee, No. 1:08-cv-771, 2009 WL 2096281, at *1 (W.D. Mich. July 10, 2009) (citing Overstreet v. Lexington-Fayette Urban Cnty. Gov't, 305 F.3d 566, 573 (6th Cir. 2002)). Further, "[w]here a preliminary injunction is mandatory—that is, where its terms would alter, rather than preserve, the status quo by commanding some positive act . . . the requested relief should be denied unless the facts and law clearly favor the moving party." Glauser-Nagy v. Med. Mut. of Ohio, 987 F. Supp. 1002, 1011 (N.D. Ohio 1997) (citing cases).

In determining whether to issue a TRO or preliminary injunction under Federal Rule of Civil Procedure 65, a district court must consider the following four factors: (1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. See, e.g., Workman v. Bredesen, 486 F.3d 896, 905 (6th Cir. 2007); Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell, 467 F.3d 999, 1009 (6th Cir. 2006) (noting that the same four factors apply regardless of whether the injunctive relief sought is a TRO or a preliminary injunction). "These factors are not prerequisites, but are factors that are to be balanced against each other." Jones v. Caruso, 569 F.3d 258, 265 (6th Cir. 2009) (internal quotations omitted). In the case before this Court, the aforementioned factors do not, on balance, weigh in favor of granting Plaintiff's request for injunctive relief.

First, the Court cannot gauge Plaintiff's likelihood of success on his Eighth Amendment claim at this initial stage of the proceedings, when the claim has only preliminarily been found viable. See Leon v. Celaya, No. 20-CV-00899-AJB-BGS, 2021 WL 533514, at *2 (S.D. Cal. Feb.

12, 2021) ("Although Plaintiff's Complaint survived screening based on the facts alleged, those allegations present only one view of the case and does not demonstrate a likelihood of success on the merits. … At this stage, the Court cannot determine whether or not Plaintiff is likely to succeed on the merits of his claims."); Hill v. Henderson, No. 3:17 CV 825, 2017 WL 4182308, at *5 (N.D. Ohio Sept. 21, 2017) (denying TRO after finding that inmate failed to establish likelihood of success on the merits based solely on facts which allowed his claim to survive initial screening).

Second, the irreparable harm cited by Plaintiff is nothing more than the potential that Defendants may retaliate against him if they continue to have access to the building where he is housed. But injunctive relief should not be granted where the claimed irreparable damage is speculative or may never occur. Kallstrom v. City of Columbus, 136 F.3d 1055, 1068 (6th Cir. 1998). In any event, an order to prevent Defendants from retaliating against Plaintiff is not necessary to avert the harm he fears, since prison officials "already have a constitutional obligation to avoid retaliating against" inmates such as Plaintiff. Moore v. Olson, No. 2:16-CV-10, 2016 WL 3390742, at *1 (W.D. Mich. May 12, 2016), report and recommendation adopted, No. 2:16-CV-10, 2016 WL 3364662 (W.D. Mich. June 17, 2016).

Finally, a TRO in this situation would cause substantial harm to prison officials who are generally afforded deference in the administration and control of the prison, and to the public's interest in seeing such administrative functions executed in accordance with governing state protocols. See Preiser v. Rodriguez, 411 U.S. 475, 491–92 (1973) ("It is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons."). Decisions concerning the administration of prisons are vested in prison officials in the absence of a constitutional violation, and any interference by the courts in that activity is necessarily disruptive. See Griffin

v. Berghuis, 563 F. App'x 411, 417–18 (6th Cir. 2014) (citing Turner v. Safley, 482 U.S. 78, 82 (1987)). Where an inmate seeks a federal order enjoining state prison officials, district courts are required to proceed with the utmost care in view of principles of federalism and comity and must be assured that any intrusion upon "the prerogatives of state correctional authorities in the administration of any aspect of prison administration" is maximally restrained. Glover v. Johnson, 855 F.2d 277, 286–87 (6th Cir. 1988); see Kendrick v. Bland, 740 F.2d 432, 438 & n.3 (6th Cir. 1984). Here, if the Court were to grant Plaintiff the requested preliminary injunctive relief, it would effectively be restricting the work-related movements of particular correctional officers inside the prison they are charged with securing. Such an intrusion into the administrative matter of how prison personnel are deployed is not justified in this case.

For these reasons, Plaintiff's Motion for Preliminary Injunction (Doc. No. 8) will be denied.

### III. MOTIONS FOR APPOINTMENT OF COUNSEL

Plaintiff has filed two motions to appoint counsel to represent him in this matter. (Doc. Nos. 7 & 12). An indigent plaintiff in a civil action, unlike a criminal defendant, has no constitutional right to the appointment of counsel; rather, the appointment of counsel in such cases is a privilege "justified only in exceptional circumstances." Miles v. Michigan Dep't of Corr., No. 19-2218, 2020 WL 6121438, at *4 (6th Cir. Aug. 20, 2020) (citing Lanier v. Bryant, 332 F.3d 999, 1006 (6th Cir. 2003), and Lavado v. Keohane, 992 F.2d 601, 606–07 (6th Cir. 1993)). Whether to appoint counsel for an indigent plaintiff in a civil action is a matter within the discretion of the district court. Lavado, 992 F.2d at 604. In making the determination of whether the circumstances warrant the appointment of counsel, courts are to consider the type of case presented and the abilities of the plaintiff to represent himself. Id. at 606 (citations omitted). Evaluation of these factors in turn

"generally involves a determination of the complexity of the factual and legal issues involved." Id. (internal quotation marks and citation omitted).

The Court at this early stage will deny Plaintiff's Motions for Appointment of Counsel, without prejudice to renewal if warranted by future circumstances. After process is served and Defendants respond to the Amended Complaint, the Magistrate Judge will be better positioned to consider whether any future request for appointment of counsel should be granted in order to develop Plaintiff's claim that he was denied constitutionally adequate nutrition.

### IV. CONCLUSION

As explained above, the Court finds that Plaintiff states a nonfrivolous Eighth Amendment claim against Defendants Loving, Carter, and Welch. This claim will proceed for further development, while all other claims and Defendants will be dismissed. Plaintiff's pending motions will be denied at this stage of the proceedings, and the matter will be referred to the Magistrate Judge for further pretrial management.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE